IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| POLAR EXPRESS SCHOOL BUS, INC., and LAKEVIEW BUS LINES, INC., | |
| Plaintiffs, | Case No. 16 C 5769 |
| v. | Judge Harry D. Leinenweber |
| NAVISTAR, INC., NAVISTAR INTERNATIONAL CORP., and IC BUS, LLC, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Defendants' Motion to Dismiss the Plaintiffs' Complaint [ECF No. 13]. For the reasons stated herein, the Court grants the Motion and dismisses the Plaintiffs' claims without prejudice. If the Plaintiffs do not amend their Complaint within twenty-one (21) days from the date of this Memorandum Opinion and Order, the dismissal will convert automatically into a dismissal with prejudice.

## I. BACKGROUND

The Plaintiffs are an Illinois school bus company, Polar Express School Bus ("Polar"), and a second company that leased buses from Polar, Lakeview Bus Lines ("Lakeview"). The Plaintiffs claim that the Defendants, Navistar, Inc. and its affiliates (collectively, "Navistar") manufactured and sold buses to Polar knowing that the buses contained defective parts.

Polar alleges that from 2007 to 2009, it purchased from Navistar approximately 40 buses containing engines with defective emissions control technology and defective brake systems. The Plaintiffs' only claims under federal law are for civil violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), *see,* 18 U.S.C. §§ 1962(c) and 1962(b), perpetrated through acts of mail and wire fraud. According to the Complaint, Navistar committed the fraud through an enterprise that included Navistar's authorized dealers, who sold the defective vehicles, and Navistar's authorized repair facilities, who serviced the vehicles. The Plaintiffs also bring claims for fraud under Illinois state law.

According to the allegations, the defects in the engines arise from an "exhaust gas recirculation" system that failed to meet U.S. Environmental Protection Agency ("EPA") guidelines. Navistar's efforts to redesign the engines to meet the applicable EPA standards actually led to worse performance, Plaintiffs claim, which in turn led to "control failures and other malfunctions."

Ostensibly for support, the Plaintiffs highlight a civil action initiated by the U.S. Securities and Exchange Commission ("SEC") against Navistar, in which the SEC claims that Navistar made several misleading public statements to investors from the years 2010 to 2012, violating the federal securities laws. Plaintiffs believe that when the SEC alleges Navistar misled its *investors* through public statements, it means, "by implication," that Navistar also deliberately deceived its *customers*. *See,* Compl. ¶ 11.

## II. DISCUSSION

### A. COUNT II – RICO CLAIM UNDER 18 U.S.C. § 1962(c)

The Court first addresses Count II, the Plaintiffs' RICO claim under Section 1962(c). That section "makes it unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . ." *Rao v. BP Products North America,* 589 F.3d 389, 399 (7th Cir. 2009) (internal quotation and citation omitted). The Plaintiffs therefore must allege facts showing "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.*

In addition, because the Plaintiffs' claims of racketeering are premised on mail and wire fraud ("predicate acts" under RICO), the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies. The Plaintiffs must state with particularity the circumstances, including the "who, what, when, where, and how," underlying the fraud. *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990). The Defendants argue, and the Court agrees, that the Plaintiffs' Complaint fails to meet the Rule 9(b) threshold.

"'An act of wire fraud requires a showing that (1) Defendants participated in a scheme to defraud; (2) Defendants intended to defraud; and (3) Defendants used wires in furtherance of the fraudulent scheme.'" *Triumph Packaging Group v. Ward,* 877 F.Supp.2d 629, 643 (N.D. Ill. 2012) (quoting *Kaye v. D'Amato,* 357 Fed. Appx.

706, 710 (7th Cir. 2009)). Mail fraud requires the same, except as to the third element, which requires the defendant to have used the mails in furtherance of the fraud. *See, id.* (citing *United States v. Boone,* 628 F.3d 927, 933 (7th Cir. 2010)). A "scheme to defraud," in turn, requires "a false statement or material misrepresentation, or the concealment of a material fact." *Williams v. Aztar Indiana Gaming Corp.,* 351 F.3d 294, 299 (7th Cir. 2003).

The Defendants point out that many of their supposed misrepresentations were made well after Polar purchased any buses from Navistar dealers. That's an obvious problem for the Plaintiffs, because there is no way they could have relied on a fraudulent statement from, say, 2012, when they purchased or leased a bus in 2009. Indeed, the SEC action that the Plaintiffs highlight deals with alleged misrepresentations and omissions all occurring from 2010 to 2012. The SEC portrays Navistar as having difficulty developing an engine that would meet impending EPA emissions standards; as a result, the SEC says, Navistar covered up its problems through misleading statements to its investors in violation of various provisions of the federal securities laws. *See,* Civil Docket Case No. 1:16-cv-03885, ECF No 1. Absent from the SEC complaint are any allegations regarding misrepresentations to Navistar's investors prior to 2010, as well as any allegations of misrepresentation to Navistar's *customers*. In other words, it is hard to see how the SEC's 2016 suit is relevant to the present matter.

Regardless, the Plaintiffs are not free to piggy-back on an SEC action. They must state allegations in their own Complaint that would form a plausible claim. In an effort to do so, the Plaintiffs attach several exhibits that they believe contain fraudulent statements. For example, they provide several Form 8-Ks (forms Navistar was required to file with the SEC to disclose various business-related developments) from the relevant time period: 2006, 2007 and 2008. *See,* Compl. Exs. A, C, D and E. These disclosures from Navistar contain optimistic predictions about its engine development efforts – that is all. They do not by themselves amount to deliberate misrepresentations.

The Plaintiffs counter that their RICO claim is not based on a misrepresentation about Navistar's engines, but instead based on a failure to disclose the known defects in the engines. A failure to disclose does not automatically constitute fraud, but it may amount to fraud if the failure is accompanied by "acts of concealment or affirmative misrepresentations." *United States v. Stephens,* 421 F.3d 503, 507 (7th Cir. 2005). But the Plaintiffs' Complaint is also short on any allegations of concealment that aren't conclusory.

In the section of their Complaint describing the Defendants' wire and mail fraud, the Plaintiffs include a litany of supposed misrepresentations by Navistar, but they do not explain how Navistar actively concealed defects. Again and again, the implication from the Plaintiffs' Complaint and briefing is that because Navistar made several public statements about their engines' quality that turned out

to be wrong, they must have known it all along.  If that were enough to meet Rule 9(b)'s requirement of pleading fraud with particularity, it is hard to imagine a claim that wouldn't meet the threshold.

It's true that the Plaintiffs allege (in conclusory fashion) that Navistar knew of the defects, but conclusory allegations are not sufficient to state any claim after *Twombly* and *Iqbal,* and such allegations certainly fail to meet Rule 9(b)'s particularity requirement.  (Examples of such conclusory statements appear throughout the Complaint, but in particular, *see,* Compl. ¶¶ 96-98.)  The Plaintiffs have provided a critical lack of detail about the fraudulent concealment – substantially less detail than, for example, a similar RICO complaint dismissed in *In re Testosterone Replacement Therapy,* 159 F.Supp.3d 898 (N.D. Ill. 2016).

The problem of lack of detail is magnified when considering the entire RICO enterprise and not just Navistar's statements.  For a successful RICO claim, there must be allegations suggesting that Navistar worked in concert with its dealers and service facilities to conceal defects, and to run up the costs for customers seeking repairs and replacement parts.  More precisely, the Plaintiffs must allege facts that would establish three things:  "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  *Rao,* 589 F.3d at 399.  There must also be allegations suggesting that the enterprise then engaged in a pattern of racketeering activity:  in other words, the predicate acts of the enterprise must be

"sufficiently related to constitute a pattern." *Id*. Aside from more conclusory statements, the Complaint contains nothing suggesting any coordination between the Defendants.

The relationship between the different Defendants in the supposed enterprise is clear enough: manufacturer, dealers, and licensed service centers. However, there are no allegations plausibly suggesting that their activities are related in any way to an overarching scheme to defraud. The Complaint alleges that when Lakeview sent its buses to be serviced, the service centers knew the engines were defective but never revealed this fact, and so profited from the continued (and ultimately fruitless) repairs. But that statement does not suggest that all Defendants shared in the profits of the same scheme; the service centers may have just been the happy beneficiaries of customers who had bought a shoddy product. *Cf*. *Guaranteed Rate, Inc. v. Barr,* 912 F.Supp.2d 671, 687 (N.D. Ill. 2012) (affirming dismissal of a RICO claim because complaint failed to assert that "RICO Defendants had any interest in the outcome of the alleged scheme beyond their own individual interests"). There are no claims of meetings or conversations between the Defendants, for example, suggesting they were conspiring to rip off their customers; thus even assuming that Navistar knew about the defects in the engines, it is wholly unclear how the dealers and service centers would have knowledge of the defects as well. *Cf*. *In Re Testosterone Therapy,* 159 F.Supp.3d at 921 (fraudulent concealment claim failed to

meet Rule 9(b)'s threshold in part because of a lack of "details about meetings or communications" related to the concealment).

The Defendants make one other material argument for dismissal: that the RICO claims are barred by the applicable statute of limitations. The applicable period for RICO claims is four years, and the period begins to run when the plaintiff knows or should know that that he has been injured by the defendant. *See, Cancer Foundation v. Cerberus Capital Mgmt.,* 559 F.3d 671, 674 (7th Cir. 2009). Here, the Defendants point out that the Plaintiffs arguably should have known about the injury (the purchase of the defective engines and subsequent costs) by as early as 2007, when they began to notice problems. The Defendants may have a strong argument, but the Plaintiffs have not pled themselves out of court on this issue. More facts are required to determine conclusively when the Plaintiffs knew of their injury and when they knew the Defendants were the parties responsible. As the Plaintiffs rightly point out, they are not required to plead facts that anticipate and negate the Defendants' affirmative defenses. *Independent Trust Corp. v. Stewart Information Services,* 665 F.3d 930, 935 (7th Cir. 2012). The statute of limitations is not a basis for dismissal at this juncture, although if the Plaintiffs attempt to amend the Complaint, they should be mindful of the issue.

### B. COUNT I – RICO CLAIM UNDER 18 U.S.C. 1962(b)

Section 1962(b) prohibits "any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is

engaged in, or the activities of which affect, interstate or foreign commerce." The primary difference between § 1962(b) and § 1962(c) is that § 1962(c) focuses on prohibition of racketeering activity, while § 1962(b) focuses on the prohibition of any interest in or control over the racketeering enterprise. But that difference is immaterial for purposes of the motion to dismiss.

The Plaintiffs' claim under Section 1962(b) contains the same deficiencies as their claim under § 1962(c). Section 1962(b), like § 1962(c), still requires allegations that would support "a pattern of racketeering activity," or in other words, at least two predicate acts. *See, Starfish Inv. Corp. v. Hansen,* 370 F.Supp.2d 759, 780 (N.D. Ill. 2005). As the Court has explained, the allegations to support with particularity a plausible claim for underlying mail and wire fraud are insufficient. Section 1962(b), like § 1962(c), also requires facts that would demonstrate an "enterprise," and as the Court has already pointed out, the Complaint is short on such facts. The claim under Section 1962(b) fails.

### III. <u>CONCLUSION</u>

For the reasons stated herein, the Court grants the Defendants' Motion to Dismiss [ECF No. 13], dismissing Counts I and II of the Plaintiffs' Complaint without prejudice. Because the Plaintiff has failed to state a federal claim, the Court relinquishes supplemental jurisdiction over Count III, the Illinois fraud claim. 28 U.S.C. § 1367(c)(3); *RWJ Mgt. Co., Inc. v. BP Prods. N. Am. Inc.,* 672 F.3d 476, 478 (7th Cir. 2012). If the Plaintiffs do not amend the

Complaint within twenty-one (21) days from the date of this Memorandum Opinion and Order, this dismissal will convert automatically into a dismissal with prejudice.

**IT IS SO ORDERED.**

                                              Harry D. Leinenweber, Judge
                                              United States District Court

Dated: December 16, 2016